James Harmon JAUBERT, Jr., aka James Harmon, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 10–99–090–CR to 10–99–094–CR.

Court of Appeals of Texas, Waco.

March 15, 2000.

Opinion Granting Rehearing April 26, 2000.

Order Adopting Publication Aug. 31, 2000.

Opinion on Petition for Discretionary Review Oct. 31, 2000.

Discretionary Review Granted June 20, 2001.

Louis E. Sturns, Arlington, for appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Asst. Dist. Atty., Fort Worth, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## O P I N I O N

BILL VANCE, Justice.

James Jaubert, Jr., was charged with one count of murder and four counts of attempted murder. *See* TEX. PEN.CODE ANN. §§ 19.02, 15.01 (Vernon 1994). He pled guilty to each charge and elected to have a jury assess punishment. Jaubert was sentenced to sixty years for the murder charge, twenty years for one attempted murder charge, and ten years for each additional attempted murder charge. He appeals, asserting only that he received ineffective assistance of counsel. We will affirm the judgment.

In his sole issue for review, Jaubert contends that his retained trial counsel "failed to render effective assistance of counsel as required by the Sixth Amendment to the U.S. Constitution and by Article 1, Section 10 of the Texas State Constitution." It is undisputed that these claims were not presented to the trial court in a motion for new trial or otherwise. We have determined that ineffective-assistance-of-counsel claims must be presented to the trial court to be preserved for appellate review. *Foster v. State,* 8 S.W.3d 445, 446 (Tex.App.—Waco 1999, no pet.) (citing *Gonzalez v. State,* 994 S.W.2d 369, 372–74 (Tex.App.—Waco 1999, no pet.)); TEX. R.APP. P. 33.1(a).

■ Jaubert's case was transferred to this court by order of the Texas Supreme Court. There are some who argue that we should apply the law of the court from which the case was transferred to cases transferred out of one court of appeals and into another. We disagree. Because this case has been transferred to us, we apply our interpretation of Rule 33.1. Therefore, because this complaint has not been preserved as required by Rule 33.1 and *Gonzalez,* we overruled Jaubert's complaint.

The judgment of the trial court is affirmed.

Justice GRAY concurring.

TOM GRAY, Justice, concurring.

### OVERVIEW

This case presents yet another problem created by the transfer of cases from one court of appeals to another under the plan for docket equalization.[1] We have now

---

1. For other cases and discussions of the problems created by the docket equalization transfer system see the following cases and the authorities cited therein:

1. *Pena v. State,* 995 S.W.2d 259, 261 (Tex. App.—Corpus Christi 1999, no pet.) (" ... where an issue concerns technical, procedural requirements such as the issue before us ... practitioners

reached the point of substantively altering the procedural due process which a litigant would otherwise obtain. If this case had not been transferred, there is no reason to believe that the Fort Worth Court of Appeals would not have reviewed the merits of the issue presented, ineffective assistance of counsel. However, this court requires preservation of a claim of ineffective assistance of counsel. Because the issue was not preserved, we decline to review the merits of this appeal.

## BACKGROUND

It is a fundamental rule of appellate practice, with very few exceptions, that to complain about something a trial court did, you must have brought it to the attention of the trial court at a time and in a manner that the trial court understood the complaint and had the opportunity to correct it. *See Lemons v. EMW Manufacturing,* 747 S.W.2d 372, 373 (Tex.1988); *Voth v. Felderhoff,* 768 S.W.2d 403, 412 (Tex. App.—Fort Worth 1989, writ denied); *Blue v. State,* 983 S.W.2d 811, 812 (Tex. App.—Houston [1st Dist.] 1998, pet. granted). This rule is currently embodied in the rules of appellate procedure. TEX.

R.APP. P. 33.1(a). The exceptions to this rule in civil cases are few. *Voth,* 768 S.W.2d at 412 (fundamental error). Jurisdiction is the issue most often allowed to be raised for the first time on appeal. *See id.*

However, in criminal cases there has traditionally been much greater latitude in issues that could be raised for the first time on appeal. There seems to be little justification for treating civil cases differently than criminal cases in terms of the need to preserve error at the trial court before it can be reviewed on appeal. *See Johnson v. State,* 23 S.W.3d 1, 11 (Tex. Crim.App. 2000, en banc). However, in criminal cases there are a variety of issues that have traditionally been allowed to be raised for the first time on appeal. One of these traditional areas has been claims of ineffective assistance of counsel.

## *GONZALEZ*

There are fourteen courts of appeals across Texas. Until we issued the *Gonzalez* decision not a single court had held that it was necessary to preserve a claim

rightfully look to the opinions of the appellate court in their jurisdiction for guidance on accepted practice. We hold that when an appellate court has a case presenting this kind of issue transferred to it, the court accepting the transfer should apply the law of the transferring jurisdiction so as to uphold the rightful expectations of practitioners in the transferring jurisdiction.").

2. *American National Insurance Company v. International Business Machines Corporation,* 933 S.W.2d 685 (Tex.App.—San Antonio 1996, writ denied) (Duncan, J., concurring and dissenting) ("Rather, I dissent because I believe the law governing this appeal is that enunciated by the First Court of Appeals, and that law clearly mandates affirmance of the summary judgment on ANICO's fraud claims.") Justice Dun-

can conducts a detailed analysis of the "myth of uniformity" and the application of a choice of law type analysis. The concept that the State of Texas has one uniform law was relied on by this court in *McLendon v. Texas Department of Public Safety,* 985 S.W.2d 571, 576–77 n. 6 (Tex.App.—Waco 1998, pet. filed).

3. *Kaufman v. State,* 901 S.W.2d 653 (Tex. App.—El Paso 1995, pet. ref'd.) (Larsen, J., concurring) ("I concur in the majority opinion, its reasoning and holding, but I write to point out the vagaries of the present 'docket equalization' system by which various courts of appeals are required to accept transfer cases from other courts.... It seems appropriate that we at least consider the reasoning of this 'home court' in reaching our own conclusions.").

of ineffective assistance of counsel. *Gonzalez v. State*, 994 S.W.2d 369 (Tex.App.—Waco 1999, no pet.). We have continued to follow the analysis of *Gonzalez* and the Court of Criminal Appeals has granted a petition for discretionary review in *Robinson v. State*, No. 10–98–194–CR (Tex. App.—Waco August 25, 1999, pet. granted) (not designated for publication), a case disposed of entirely upon the basis of *Gonzalez*. *Robinson v. State*, No. 99–1701 (Tex. Crim.App. December 15, 1999) (order granting petition for discretionary review). We have also elaborated on our analysis and reasoning in subsequent cases. *See Foster v. State*, 8 S.W.3d 445 (Tex.App.—Waco 1999, no pet.).

## WHICH LAW CONTROLS?

Notwithstanding our belief that *Gonzalez* and *Foster* are correct on the issue, they have not, as of yet, obtained universal acceptance. In particular, we have found no opinion from Fort Worth which follows *Gonzalez* or holds that ineffective assistance of counsel claims must be preserved before they can be presented on appeal. To the contrary, Fort Worth has continued to review ineffective assistance of counsel claims on the merits without discussing the preservation issue. *Mallet v. State*, 9 S.W.3d 856 (Tex.App.—Fort Worth 2000, no pet.); *Wood v. State*, 4 S.W.3d 85 (Tex. App.—Fort Worth 1999, no pet.). The case currently before this Court was decided by a Tarrant County District Court. Appeal was taken to the Fort Worth Court of Appeals. By a transfer order from the Supreme Court for the purposes of docket equalization, it was transferred to this Court. The question is: Should we apply the law as we believe it should be across the State of Texas or should we apply the law in the manner we believe Fort Worth would apply it?

Because I am bound by the principle of stare decisis, I must yield my individual opinion to the law as previously announced by this court on transfer cases. We will apply the law as we believe it should be across the state. *McLendon v. Department of Public Safety*, 985 S.W.2d 571, 576–77 n. 6 (Tex.App.—Waco 1998, pet. filed). In *McLendon*, under the banner of being non-parochial, this court held that it would apply the law as it saw it, regardless of what some other court of appeals (from where the case originated) had announced it to be. What could be more parochial? Nevertheless, that is the rule under which I must operate at this time, for this case, and until directed otherwise by the high courts of this State. Accordingly, I concur in the majority opinion.

## ORDER

PER CURIAM.

On March 15, 2000, we issued an opinion affirming James Jaubert's conviction for one court of murder and four counts of attempted murder. *See* Tex. Pen. Code Ann. §§ 19.02, 15.01 (Vernon 1994). His only assertion on appeal was ineffective assistance of counsel, which we declined to review on the basis that it had not been preserved in compliance with Rule 33.1. *See* Tex.R.App.P.33.1. Jaubert filed a petition for discretionary review on April 7. On April 13, the Court of Criminal appeals issued *Robinson v. State*, holding that compliance with Rule 33.1 is not necessary to bring a claim of ineffective assistance of counsel on appeal. *Robinson v. State*, 16 S.W.3d 808, 813 (Tex. Crim. App.2000). Thus, we grant rehearing in this cause on our own motion so that we may address the merits of Jaubert's complaint. Tex. R.App. P.50. The original opinion and judgment of March 15, 2000, are with-

drawn. *Id.*[1]

## OPINION ON PETITION FOR DISCRETIONARY REVIEW

VANCE, Justice.

James Jaubert, Jr. pled guilty to one count of murder and four counts of attempted murder. He elected to have the jury assess punishment. After the punishment hearing, Jaubert was sentenced to sixty years for the murder charge, twenty years for one attempted murder charge, and ten years for each additional attempted murder charge. He appeals, asserting only that trial counsel was ineffective in failing to request that the State give notice of its intent to offer evidence of extraneous offenses or bad acts. We will reverse the judgment and order a new punishment hearing.

## BACKGROUND

On March 15, 2000, we issued an opinion affirming Jaubert's conviction. His only assertion on appeal was ineffective assistance of counsel, which we declined to review on the basis that it had not been preserved in compliance with Rule 33.1. *See* TEX.R.APP. P. 33.1. Jaubert filed a petition for discretionary review on April 7. On April 13, the Court of Criminal Appeals issued *Robinson v. State,* holding that compliance with Rule 33.1 is not necessary to bring a claim of ineffective assistance of counsel on appeal. *Robinson v. State,* 16 S.W.3d 808, 813 (Tex.Crim.App. 2000). Thus, we granted rehearing in this cause on our own motion so that we could address the merits of Jaubert's complaint. TEX.R.APP. P. 50.

1. Jaubert's petition for discretionary review is dismissed by operation of law. TEX.R.APP.P. 50.

## RELEVANT FACTS

Jaubert and fellow gang-members were involved in three drive-by-shootings in Fort Worth during April 1994 and July 1995. Bullets killed one young man and wounded four others. Jaubert pled guilty to five separate indictments and elected to have a jury assess punishment. During the punishment stage, Jaubert testified about the shootings and presented character evidence from several witnesses. Jaubert argues that he was ambushed when the State repeatedly attempted to elicit evidence of extraneous offenses and bad acts. For example, during the cross-examination of Louis Pedleton, Jaubert's uncle, the following exchange took place:

Q. [By Ms. Box, the State's attorney]: Okay. You just mentioned that the Defendant's father has given you an impression of the Defendant's behavior and attitude while he's been in jail; is that correct?

A. Yes, ma'am.

Q. And did his father also make you aware of a variety of disciplinary actions this Defendant has had while he's been in custody?

A. No, ma'am.

Q. And did you hear from the Defendant's father, I guess starting with 1995, that the Defendant, in fact, got into a fist fight back in February of '95?

A. I heard that something of that nature, someone had—in jail, you know, things happen in jail.

Q. And did he also make you aware of this Defendant's involvement in a rape while he was in jail?

A. No, he didn't.

This testimony was elicited without an objection by Jaubert's trial counsel. While questioning Jaubert's father, the State's counsel asked the following questions:

Q. And as far as the rape offense in jail, are you aware that your son actually was the person who slapped the victim so hard he became unconscious?

A. No, I was not.

Q. Were you aware that the officer that interviewed the victim in that case observed bruises on the victim's face and arms and he had hair falling out of his head?

A. No.

Q. Are you aware that the victim also had blood coming from his anus?

A. No, I was not.

Q. Were you aware that the victim told the nurse that he had been beaten and raped four times in the last week?

A. No.

Q. Were you aware that the victim was so afraid of your son that he refused to prosecute this case?

A. I was not aware.

This testimony was also elicited without an objection by Jaubert's trial counsel. In her cross-examination of the Defendant, counsel for the State asked the following questions of the Defendant, not only about the alleged rape, but other incidents of misconduct:

Q. We'll get back to that conflict in a minute. What I'm asking you is: Do you recall back on April 11th of 1994, refusing to obey an order of a female officer over in the jail?

A. No, I don't.

Q. Let me ask you about February 12th of 1995. Do you recall hitting another inmate as he left the shower with your fist?

A. No, I don't.

Q. And of course, let's talk about the April 11th, 1995 rape of Kevin Manning. Is it still your position that you were in a different cell at that time?

A. Exactly.

Q. Okay. There's no way that you could have participated in that?

A. No way possible.

Q. Do you recall telling the victim in that case, Mr. Kevin Manning, that, quote, unquote, "Come here, Bitch, or I'll kill you"? Do you recall saying that?

A. No, ma'am.

Q. Do you recall hitting Mr. Manning to such an extent that he passed out and was unconscious?

A. No, ma'am.

Q. So it's your position that you never raped Mr. Manning; is that right?

A. That's right.

Q. Never participated in it?

A. I never participated.

Q. Are you aware that other inmates observed you while this was going on?

A. I never participated.

## DISCUSSION

In his sole issue for review, Jaubert contends that his retained trial counsel failed to render effective assistance of counsel as required by the Sixth Amendment to the United States Constitution and by Article 1, Section 10 of the Texas Constitution. In particular, Jaubert argues his trial counsel did not render effective assistance of counsel during the punishment phase of the trial because he failed to request that the State give notice of its intent to offer evidence of extraneous

offenses or bad acts. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(g) (Vernon Supp.2000).

### A. Extraneous Offenses and Bad Acts

Article 37.07, section 3(a) permits the court to admit evidence at punishment of extraneous offenses or bad acts. *Id.* § 3(a). Evidence admitted under section 3(a) serves to provide the jury "with all relevant evidence in order to assess fair and appropriate punishment." *Beasley v. State*, 902 S.W.2d 452, 457 (Tex.Crim.App. 1995); *Chimney v. State*, 6 S.W.3d 681, 697 (Tex.App.—Waco 1999, no pet.). However, through article 37.07, section 3(g), a defendant can discover if the State intends to offer this type of evidence. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(g).

### B. Ineffective Assistance of Counsel

Texas courts adhere, as we must, to the United States Supreme Court's two-pronged *Strickland* test to determine whether counsel's representation was so inadequate as to violate a defendant's Sixth Amendment right to counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App.1999). The Court of Criminal Appeals recently held that *Strickland* applies to the punishment phase of a noncapital case. *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex.Crim.App. 1999).[1]

*Strickland* requires a defendant to show that: (1) counsel's representation fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defendant. *Roe v.*

*Flores–Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 1034, 145 L.Ed.2d 985 (2000); *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. The assessment of whether a defendant received effective assistance of counsel must be made according to the facts of each case. *Thompson*, 9 S.W.3d at 813. The appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Id.*

■ However, sometimes a single error is so substantial that it alone causes an attorney's assistance to fall below the Sixth Amendment standard. *Thompson*, 9 S.W.3d at 813; *Mitchell v. State*, 23 S.W.3d 582, 586 (Tex.App.—San Antonio, no pet.). Courts have frequently found counsel ineffective because of a single error affecting only the punishment assessed. *Ex parte Scott*, 581 S.W.2d 181, 182 (Tex.Crim.App.1979); *Cooper v. State*, 769 S.W.2d 301, 305 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd); *May v. State*, 660 S.W.2d 888, 890 (Tex.App.—Austin 1983), *aff'd*, 722 S.W.2d 699 (Tex.Crim. App.1984); *Burnworth v. State*, 698 S.W.2d 686, 690 (Tex.App.—Tyler 1985, pet. ref'd). To ignore a grievous error simply because it is single, while granting relief where multiple errors cumulatively reach the same magnitude, would be contrary to the reasons that caused the creation of the doctrine of ineffective assistance of counsel. *Valencia v. State*, 966 S.W.2d 188, 191 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd).

### C. Analysis

Jaubert argues his trial counsel was ineffective when he failed to request that the

---

1. *Hernandez* expressly overruled *Ex parte Duffy*, 607 S.W.2d 507 (Tex.Crim.App.1980), and *Ex parte Cruz*, 739 S.W.2d 53 (Tex.Crim.App. 1987), and held that *Strickland* requires that all ineffective assistance of counsel claims must show prejudice that is a result of counsel's deficient performance. *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex.Crim.App. 1999) (citing *Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984)).

State give notice of its intent to offer evidence of extraneous offenses or bad acts. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(g). The State claims that Jaubert's trial counsel was prepared, and that Jaubert has failed to overcome the presumption that his counsel's conduct might be considered sound trial strategy.

### 1. Objective Standard of Reasonableness

■ When reviewing a claim of ineffective assistance of counsel under the first prong, there exists a strong presumption that defense counsel's conduct was reasonable and constitutes sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. We evaluate the totality of the representation from counsel's perspective at trial, rather than counsel's isolated acts or omissions in hindsight. *Gutierrez v. State*, 8 S.W.3d 739, 749 (Tex.App.—Austin 1999, no pet.). Appellant has the ultimate burden to overcome this presumption and demonstrate not only that counsel's performance was unreasonable under the prevailing professional norms, but that the challenged action was not sound trial strategy. *Id.*

### a. Trial Counsel's Participation

■ The State first argues that trial counsel was effective because he participated in *voir dire*, cross-examined State's witnesses, presented witnesses for his defense, and filed eight motions. However, the Court of Criminal Appeals has held that this level of participation alone is not sufficient to show that counsel acted reasonably. *Ex parte Walker*, 794 S.W.2d 36, 37 (Tex.Crim.App.1990).

In *Walker*, although counsel gave competent advice about who should have assessed punishment, he failed to effect his client's wishes by neglecting to file a "motion to elect" prior to trial. *Id.* at 36–37. The Court held that even though the trial

court had made findings that counsel had filed numerous pre-trial motions, conducted *voir dire*, cross-examined the State's witnesses, made numerous objections, made arguments at both phases of the trial, preserved the defendant's right to appeal, investigated the facts of the case, and discussed the law with the defendant, this single error rendered his assistance ineffective. *Id.* at 37. Likewise, Jaubert's trial counsel's level of participation alone is not sufficient to show that he was effective.

### b. Sound Trial Strategy

Both the State and dissent claim that Jaubert has failed to overcome the presumption that his trial counsel's conduct was sound trial strategy. In *Ex Parte Menchaca*, the defendant was tried for delivery of a controlled substance. 854 S.W.2d 128, 129 (Tex.Crim.App.1993). During cross-examination, the State elicited testimony from Menchaca concerning his prior conviction for rape. *Id.* Menchaca claimed his counsel was ineffective in failing to file a motion in limine to prohibit the introduction of the prior conviction. *Id.* The Court of Criminal Appeals held that there could be no strategic basis for failing to file the motion in limine. *Id.* at 133.

Similarly, here there could be no strategic basis for not requesting notice under article 37.07, section 3(g). *See id.* "The purpose of article 37.07, section 3(g) is to avoid unfair surprise, that is, trial by ambush." *Chimney*, 6 S.W.3d at 693; *Nance v. State*, 946 S.W.2d 490, 493 (Tex.App.—Fort Worth 1997, pet. ref'd). "In other words, the purpose is to allow the defendant adequate time to prepare for the State's introduction of the [evidence] at trial." *Chimney*, 6 S.W.3d at 693–94.

The benefit of article 37.07, section 3(g) to a defendant does not turn on whether his attorney is aware of his extraneous

misconduct. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(g). Rather, the section provides a mechanism for a defendant to discover what evidence the State is aware of and whether it intends to offer it to affect his punishment. *Id.* A defendant is not required to disclose anything to the State when making the request. *Id.* Article 37.07, section 3(g) operates to provide a one-way flow of information from the State to the defendant. *Id.* There could be no strategic basis for not requesting notice under article 37.07, section 3(g). *See Ex Parte Menchaca,* 854 S.W.2d at 133.

We find that this failure was unreasonable and is not justified by "trial strategy." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065; *see Valencia,* 966 S.W.2d at 191. Jaubert has shown that his trial counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

### 2. Prejudice

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, *i.e.,* a trial whose result is reliable. *Id.* at 687, at 2064; *Mallet v. State,* 9 S.W.3d 856, 866 (Tex.App.—Fort Worth 2000, no pet.). A defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 669, at 2056.

In *Menchaca,* the Court of Criminal Appeals held that Menchaca's prior conviction permeated the entire guilt-innocence phase of the trial, flowing from his trial counsel's failure to file a motion in limine. *Ex Parte Menchaca,* 854 S.W.2d at 133. The determination of the Menchaca's guilt rested entirely on the credibility of the witnesses.

*Id.* The Court observed that the State used Menchaca's prior conviction to undermine his credibility and stated that Menchaca was not worthy of belief because he was "a convicted rapist." *Id.*

The adversarial process broke down at the punishment stage in this case. *See Mitchell,* 23 S.W.3d at 587. Due to counsel's failure to request notice, Jaubert and his character witnesses were ambushed when the State repeatedly attempted to elicit evidence of extraneous misconduct including the rape of a jail inmate by Jaubert. The record is silent about who fired the fatal shot that killed the young man. Jaubert presented testimony from a number of character witnesses. However, their testimony about his character was overshadowed by evidence of extraneous misconduct, particularly as it related to the rape incident.

There is a reasonable probability that but for the attorney's error Jaubert's sentence would have been less. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *see Valencia,* 966 S.W.2d at 190. As a result, Jaubert has satisfied the second prong that his counsel's error was so serious that it deprived him of a fair trial. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. Thus, we hold that the failure to request notice under article 37.07 was an error of a magnitude significant enough to render Jaubert's counsel ineffective. *Thompson,* 9 S.W.3d at 813; *Mitchell,* 23 S.W.3d at 586.

### D. Reply to the Dissent

The dissent cites three reasons: 1) misapplication of the law to the facts; 2) disregard of higher court precedent; and 3) a rewrite of a statute. We will address each of these.

### 1. The Dissent Does not Apply the Plain Language of the Statute

The dissent essentially claims that because none of the extraneous offense evidence was introduced during the State's "case-in-chief" the State would have no duty to disclose its intent to introduce the evidence, even if Jaubert's attorney had made the article 37.07 request. Thus, the dissent claims, there can be no ineffective assistance of counsel for having failed to make such a request. However, the dissent fails to apply the plain language of article 37.07, section 3(g). TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(g).

■ The dissent relies on an opinion of the Second Court of Appeals, which addressed whether the notice requirements of article 37.07, section 3(g) applies to rebuttal evidence. *Washington v. State,* 943 S.W.2d 501, 505 (Tex.App.—Fort Worth 1997, pet. ref'd). In *Washington,* the Court observed that article 37.07 sets forth the rules for conducting the punishment phase of a trial. *Id.* at 503. We agree. Section 3(g) of that article provides:

On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Criminal Evidence.[2] If the attorney representing the state intends to introduce an extraneous crime or bad act that has not resulted in a final conviction in a court of record or a probated or suspended sentence, notice of that intent is reasonable only if the notice includes the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act. The requirement under this subsection that

the attorney representing the state give notice applies only if the defendant makes a timely request to the attorney representing the state for the notice. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(g).

The Court further stated that Rule 404(b) is the rule of evidence governing the admission of similar evidence at the guilt-innocence phase of trial. *Washington,* 943 S.W.2d at 503. We agree with this statement as well. Rule 404(b) provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

TEX.R. EVID. 404(b).

However, in *Washington,* the Court held that article 37.07, section 3(g), like rule 404(b), is limited to evidence the State intends to offer in its case-in-chief. *Id.* at 506. The Court looked to extratextual considerations, and concluded that based on the legislative history of the statute, the Legislature did not intend to expand the State's duty to provide notice. *Id.* at 505.

■ We disagree with the Fort Worth Court's reasoning. When inter-

---

**2.** In 1998, the Texas Rules of Evidence were jointly promulgated by the Texas Supreme Court and the Texas Court of Criminal Appeals. The combined rules became effective on March 1, 1998, however, section 3(g) does not reflect this change. TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(g) (Vernon Supp.2000).

Former Rule 404(b) of the Texas Rules of Criminal Evidence is substantially identical to Rule 404(b) of the Texas Rules of Evidence. *Compare* TEX.R.CRIM. EVID. 404(b), 701–702 S.W.2d (Texas Cases) XXIX, XXXVII, *with* TEX.R. EVID. 404(b). Thus, we cite to the current rule for ease of reference.

preting a statute, we employ the ordinary meaning of the language of that statute. *State v. Mancuso,* 919 S.W.2d 86, 87 (Tex. Crim.App.1996); *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991). We resort to extratextual considerations "[o]nly when the application of a statute's plain language is ambiguous or would lead to absurd consequences which the Legislature could not possibly have intended." *Mancuso,* 919 S.W.2d at 88. "Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or [to] subtract from such a statute." *Id.*

According to *Washington,* article 37.07 sets forth the rules for conducting the entire punishment phase of a trial. *Washington,* 943 S.W.2d at 503. Article 37.07, section 3(g) states that upon request, "notice of intent to introduce evidence *under this article* shall be given in the same manner required by Rule 404(b), Texas Rules of Criminal Evidence." TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(g) (emphasis added). However, unlike section 3(g), Rule 404(b) is explicitly limited to evidence introduced during the State's "case-in-chief." TEX.R. EVID. 404(b) ("notice is given in advance of trial of intent to introduce in the State's *case-in-chief* such evidence") (emphasis added). If the Legislature intended to limit the State's duty to provide notice, as the dissent and the *Washington* court claim, then the plain language of article 37.07, section 3(g) would limit its application to evidence the State intends to offer in its "case-in-chief." However, this limitation is absent from section 3(g). TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(g).

We recognize that section 3(g) also states that notice is given, "in the same *manner* required by Rule 404(b), Texas Rules of Criminal Evidence." *Id.* (emphasis added). Manner is defined as "a way,

mode, method of doing anything, or mode of proceeding in any case or situation." BLACK'S LAW DICTIONARY 963 (6th ed.1990). Consequently, this portion relates only to the procedure governing a defendant's request and the State's response to that request, and not to the scope of the information to which the section applies.

■ We presume that the Legislature uses every word and phrase in a statute for a purpose, and if the Legislature excludes certain words in a statute, it does so for a reason. *Uribe v. State,* 7 S.W.3d 294, 296 (Tex.App.—Austin 1999, pet. ref'd). As a result, the plain language of section 3(g) establishes that its scope encompasses the entire punishment phase, and is not limited to the State's case-in-chief. *McCain v. State,* 22 S.W.3d 497, 501 (Tex. Crim.App.2000).

### 2. The Dissent Makes a Number of Presumptions

The dissent claims that we have ignored higher court precedent and reversed the presumption that Jaubert's trial counsel was effective. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. It claims that we have "searched the record for an explanation to justify why counsel would not have made the request," and even ignored statements which would explain why Jaubert's counsel did not. However, the dissent's theory is based upon a number of presumptions and will not support the assertion that Jaubert's counsel was effective.

■ The dissent points to the State's open file policy as an explanation for the absence of an article 37.07, section 3(g) request. However, an "open file" policy is not a substitute for discovery. In fact, the Court of Criminal Appeals has held that a State's open file policy will not satisfy a Rule 404(b) request. *Buchanan v. State,* 911 S.W.2d 11, 15 (Tex.Crim.App.1995).

There are no controls on the "open file." In the criminal courts, the defendant is not entitled to a copy of the file, but is only permitted to examine the file and take notes. The State can add to or subtract from the file after the defendant sees it. As a result, the defendant would have to make daily or weekly trips to the district attorney's office just to check its contents. However, an article 37.07, section 3(g) request imposes an ongoing duty upon the State to notify a defendant of all extraneous offense evidence it intends to introduce. Consequently, a State's open file will not substitute for an article 37.07, section 3(g) request.

The dissent also points to the fact that an oral request or voluntary cooperation could have existed between the parties. However, the record does not reflect these possibilities. Furthermore, according to the dissent, there is a pragmatic explanation for not making a request. It states that based on the "doctrine-of-negative-surveillance," a request would place a defendant's extraneous acts under greater scrutiny and could possibly lead to the discovery of other acts.

However, this proposition assumes that the State is normally inept in its knowledge of a case and in its preparation for trial. We do not join that assumption. Section 3(g) does not provide a mechanism by which the State could learn about additional extraneous crimes or bad acts. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(g). Rather, section 3(g) provides a mechanism for a defendant to discover extraneous evidence which the State has and which it intends to offer into evidence to assess his punishment. *See id.*

The dissent's last explanation of why Jaubert's trial counsel failed to make an article 37.07, section 3(g) request, is "that having nothing to counter this evidence with, the defense 'put their best foot for-ward' and hoped for the best." However, this argument actually supports our finding that Jaubert's counsel was ineffective. *See Mitchell,* 23 S.W.3d at 587. As a result, we disagree with the dissent's theory that we have ignored higher court precedent and reversed the presumption that Jaubert's trial counsel was effective.

### 3. The Dissent Presumes the Defense Bar will Behave Unprofessionally

The dissent further claims that we have rewritten article 37.07, section 3(g), "to require the State to disclose evidence of extraneous bad acts, without a request, if under any scenario which may develop at trial the State could seek to introduce or refer to a prior bad act or extraneous offense for any purpose." It states that "[i]f the State fails to make this disclosure the State must forego all use of the evidence or the defendant is guaranteed a new trial." The dissent claims that this opinion will encourage "gamesmanship," and its "fear is that the very decision of whether or not to make an Article 37.07 request, versus the potential to obtain a new trial (at least on punishment) will become part of trial strategy."

The dissent's theory is similar to one previously espoused by the Fourth Court of Appeals in *Rodriguez v. State,* 981 S.W.2d 357, 359 (Tex.App.—San Antonio 1998, no pet.). In *Rodriguez,* the Court held that counsel's failure to request that the State give notice under article 37.07, section 3(g) was not sufficiently egregious to render her assistance ineffective. *Id.* The Court reasoned that to hold otherwise would effectively block any attempt by the State to introduce evidence of this type, because in the case of an unfavorable result a defendant would be able to claim ineffective assistance as a matter of right. *Id.*

We disagree. This theory presumes that the defense bar will behave unprofessionally and risk being found ineffective and incompetent, solely to further a single client's interests. Under the Disciplinary Rules of Professional Conduct, a lawyer is a representative of clients, an officer of the legal system, and a public citizen having a special responsibility for the quality of justice. TEX. DISCIPLINARY R. PROF'L CONDUCT preamble ¶ 1. Lawyers, as guardians of the law, play a vital role in the preservation of society. *Id.*

▬▬ The fulfillment of this role requires an understanding by lawyers of their relationship with and function in our legal system. *Id.* A consequent obligation of lawyers is to maintain the highest standards of ethical conduct. *Id.* A lawyer should zealously pursue clients' interests within the bounds of the law, however, in doing so, a lawyer should be competent, prompt and diligent. *Id.* at ¶ 3. The defense bar is likewise governed by these rules of professional conduct, and we will not presume that they will behave contrary to those requirements. Consequently, we are not persuaded by the dissent's theory that the defense bar will behave unprofessionally solely to further a client's interests.

## CONCLUSION

We find no strategic reason for failing to request notice under article 37.07, section 3(g). *See Ex Parte Menchaca*, 854 S.W.2d at 133. Consequently, Jaubert has overcome the presumption that his trial counsel's conduct, during the punishment phase, was reasonable. Furthermore, there is a reasonable probability that but for the attorney's error Jaubert's sentence would have been less. As a result, Jaubert's counsel's error was so serious that it deprived him of a fair punishment hearing.

Accordingly, we find that his counsel failed to render effective assistance as required by the Sixth Amendment to the United States Constitution and by article 1, section 10 of the Texas Constitution. Therefore, because the error occurred during the punishment phase, we reverse the judgment and remand the cause to the trial court for a new punishment hearing in accordance with article 44.29(b) of the Code of Criminal Procedure. TEX.CODE CRIM. PROC. ANN. art. 44.29(b) (Vernon Supp.2000); *Ex parte Welch*, 981 S.W.2d 183, 185–86 (Tex.Crim.App.1998).

TOM GRAY Justice, dissenting on petition for discretionary review.

For three reasons I cannot join my learned colleagues in their majority opinion. First, they misapply the rules to the facts, thus reaching an improper result. Second, they do this by essentially ignoring higher court precedent by which we are bound. Third, ultimately they rewrite the statute as authored by the legislature. I respectfully, but strongly, dissent.

### BACKGROUND

James Harmon Jaubert, Jr., also known as "Big Jube" and "J.J.," entered a plea of guilty to one count of murder and four counts of attempted murder. He elected to have the jury assess punishment. They did. Now he complains that his trial counsel was ineffective. The basis of the complaint is that his trial counsel did not request the State to disclose its intent to use evidence of extraneous bad acts during punishment. On the record before us and on the application of controlling laws and precedent, I would hold that Jaubert failed to prove his claim and affirm the judgment.

### THE STATUTE

Jaubert relies on a provision of the Code of Criminal Procedure which, on request

by the defendant, requires the State to disclose their intent to rely on extraneous offenses or bad acts for the assessment of punishment. The Code provides:

Sec. 3. Evidence of prior criminal record in all criminal cases after a finding of guilty.

(a) Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act. . . .

\* \* \*

(g) On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Criminal Evidence. If the attorney representing the state intends to introduce an extraneous crime or bad act that has not resulted in a final conviction in a court of record or a probated or suspended sentence, notice of that intent is reasonable only if the notice includes the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act. The requirement under this subsection that the attorney representing the state give notice applies only if the defendant makes a timely request to the attorney representing the state for the notice.

Tex.Code Crim. Proc. Ann. art. 37.07 § 3.(a) and (g)(Vernon Supp.2000)(Referred to herein as "Article 37.07").

### Events at Trial

Jaubert entered a guilty plea to one murder charge and four attempted murder charges. He elected to have the jury determine punishment. In its case-in-chief, the State introduced evidence of each of the crimes. Each was the result of gang related drive-by shootings. The first drive-by shooting resulted in one victim being shot twice. In the second shooting, the victim was shot once in the buttocks, and the bullet was lodged too close to his spine to be removed. The third drive-by shooting occurred approximately six minutes after the second shooting. The third shooting resulted in two victims being wounded and one victim being killed.

In the first full day of trial, the State presented its case for punishment. It was very direct. The evidence was limited to the crimes for which the defendant had entered a guilty plea. The witnesses consisted of the four surviving victims and one eye witness, the deceased victim's mother, three officers that were primarily involved in investigating each of the three shootings, the photographer that photographed the scene of the third shooting and the recovered stolen vehicle from which two of the shootings were carried out, a fire arms expert and the Chief Medical Examiner that performed the autopsy on the deceased victim. There were a total of twelve witnesses presented by the State in its case-in-chief. There was no mention of extraneous crimes or other bad acts.

The defense theory was clear. James Jaubert, Jr. was no longer the same person he had been at the time of the crimes. He was wholly reformed, having rediscovered God. He was the son of a minister that had lost his connection but had found it again. Given that Jaubert entered a plea of guilty to all five charges, this was a very sound trial strategy to get his sentence as low as possible or possibly to be released on community supervision. Of course there was no need to establish his fall from grace. The State had already done that. To establish his history as a good, well mannered child and youth, Jaubert called his high school assistant principal, a second cousin that grew up with him in church, his retired pastor and a civil rights investigator for the federal government that worked with his mother. These were all historical witnesses that knew him before his gang involvement and referred to him as "J.J."

The defense then called a cousin that had received a recent phone call from Jaubert in which he lead her in prayer, a lawyer that also had a son in the Tarrant County jail and had gotten to know Jaubert's parents from meeting them at visitation and an uncle that was also a minister of the Gospel. The latter two witnesses both related the changes that Jaubert's father reported to them in Jaubert's demeanor and attitude which had occurred while he was in jail. The defense then called both of Jaubert's parents and Jaubert himself. These witnesses testified about the new Jaubert, who was changed and repentant for what he had done. They testified about how he had changed his life and how he was trying to help them raise their children and help others learn from his mistakes.

The State called several witnesses to rebut the evidence that Jaubert had changed including several who had very negative opinions about his reputation for being a law abiding citizen. There were also at least two rebuttal witnesses that directly impeached statements that Jaubert made during his testimony.

Based on the jury's verdict, he was sentenced to terms in prison of 60/20/10/10/10 years on the five charges, with no recommendation for community supervision and no fines. The sentences run concurrently.

His argument on appeal is that by his attorney having failed to obtain notice that the State intended to use evidence of extraneous crimes and other bad acts, he was unprepared and his witnesses were ambushed by very damaging allegations of extraneous crimes and other bad acts in which he had engaged. The principle testimony about which complaint is made relates to the rape of another inmate in the Tarrant County jail. To fully understand why the testimony was admissible, and why it was not ineffective assistance of counsel to not object to most of the references to the rape (some were objected to), requires a review of the full record, not just what Jaubert cites in his brief.

## SUMMARY OF THE TESTIMONY

There was no reference made to the rape through the first 18 witnesses at trial. This included the entirety of the State's case-in-chief and the first six of Jaubert's witnesses. The nineteenth witness was Louis Pedleton. Pedleton is Jaubert's uncle and is a minister. Like several of the other witnesses, he was offered to show that Jaubert would respond to efforts to rehabilitate him and that he was a good candidate for community supervision. At the conclusion of Pedleton's direct testimony, Pedleton testified that Jaubert's father had related to Pedleton that Jaubert had turned his life around while in jail and had "become closer to the Lord."

Cross-examination of Pedleton focused on his knowledge of Jaubert and the witness's knowledge of the conduct in which Jaubert had engaged. It was very extensive. In several pages of questioning, the State established that Pedleton knew very little about what Jaubert was on trial for or what conduct Jaubert had engaged in while in jail. Significantly, there was only one question related to the prison rape in several pages of cross-examination. The testimony was clearly not intended as proof of any of the incidents referred to but rather to test the basis of the witness's knowledge of Jaubert and his purported change in attitude.

The next witness was Jaubert's father, James Sr. James Sr. was also being offered as a character witness to establish that Jaubert had changed his life, was from a good home, would be a good candidate for rehabilitation and should receive a short sentence or community supervision. The record does not indicate any breaks or interruptions after the rape was first mentioned during the cross-examination of Pedleton during which the defense could have educated themselves or prepared James Sr. regarding the rape incident. However the testimony which was elicited during the direct examination of Jaubert's father indicates not only counsel's familiarity with the event but the witness's as well, and that Jaubert's strategy to defend against it was to explain that he was not involved in the rape.

On cross-examination, the State tested James Sr.'s knowledge regarding his son's "involvement" in the rape. Again, it is obvious the State was testing the witness's knowledge of the character of Jaubert and his suitability for community supervision.

Next came the testimony of Jaubert. Again, the defense strategy was to establish that all the bad things that Jaubert had done in his life were in his past life as a gang member and that he was coming clean with the jury with all his misdeeds. This included Jaubert confessing to another drive-by shooting for which he was not on trial (making a total of four confirmed drive-by shootings in which he was involved). He also testified about two specific "conflicts" in which he had been involved while in jail. One involved a fight with other inmates and one involved a confrontation with a guard. He denied involvement in the rape. He testified that he slept through it, and the only way he was aware of it was because another inmate told him.

On cross-examination, the State inquired about several incidents in jail about which he had not testified. He continued to deny involvement in the rape.

The presentation and cross-examination of Jaubert's witnesses took roughly the same amount of time as the presentation and cross-examination of the State's witnesses during its case-in-chief: just over one full day of testimony.

In rebuttal to Jaubert's defense strategy to show that he was a good candidate for rehabilitation, deserving of a light sentence and a recommendation for community supervision, the State called seven witnesses. These witnesses rebutted specific aspects of the picture that Jaubert had attempted to paint during his defense. Eddie L. South, a lieutenant from the Tarrant County jail, testified about the rape incident. During his direct testimony, Jaubert objected that the question called for hearsay as to what the victim of the alleged raped had reported to the investigating officer. Upon raising the hearsay objection, the State specifically explained it was offering this testimony only for impeachment purposes, not for the truth of the matter asserted. The trial court sustained the hearsay objection and would not allow Lieutenant South to testify what the

victim had told him. Again, upon a close reading of the direct and cross-examination of Lieutenant South, the record reveals that Jaubert, and in particular his counsel, continued with a specific plan of defense against Jaubert's involvement in the prison rape. Specifically, the strategy was to show that due to the cell assignments Jaubert could not have participated in the rape that Lieutenant South had investigated.

Jaubert took the stand again to rebut the impeachment evidence. With regard to the rape, his story changed slightly on direct examination. He testified that there had been more than one rape. However, he continued with the strategy to show that he was not involved and could not have participated in the rape because of the cell to which he was assigned.

However, on cross-examination, Jaubert's testimony of the extent and source of his knowledge about the rape changed dramatically. He testified about multiple rapes, and he no longer testified that he slept through them and was only aware of them based upon what someone told him. His testimony reveals that at least one of the rapes occurred while he was in the day room and the door to the cell in which the rape occurred was open. Thus, his testimony changed from one rape which he slept through and knew nothing about, to multiple incidents, at least one and possibly two of which he admits he at least observed.

### STANDARD OF REVIEW FOR CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL

Now, with a firm basis of the events as they occurred at trial, we turn to the application of the law regarding an allegation of ineffective assistance of counsel. In assessing the effectiveness of counsel, we apply the test set forth by the Supreme Court in *Strickland v. Washington.* *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Ex parte Jarrett,* 891 S.W.2d 935, 938 (Tex.Crim.App.1994). *Strickland* requires us to determine whether:

(1) counsel's performance was deficient; and if so,

(2) whether there is a reasonable probability the results would have been different but for counsel's deficient performance.

*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

"Consideration of the 'totality of the representation,' rather than isolated acts or omissions of trial counsel, determines whether this standard has been met." *Ex parte Kunkle,* 852 S.W.2d 499, 505 (Tex. Crim.App.1993) (quoting *Ex parte Raborn,* 658 S.W.2d 602, 605 (Tex.Crim.App.1983)); *accord Ferguson v. State,* 639 S.W.2d 307, 310 (Tex.Crim.App. [Panel Op.] 1982). We strongly presume that counsel's conduct lies within the "wide range of reasonable representation." *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996). It is not an allegation that should be made lightly. *Estes v. State,* 985 S.W.2d 684, 685 (Tex.App.—Fort Worth 1999, pet. ref'd). An appellant bears a "tremendous burden" in proving ineffective assistance of counsel. *Shilling v. State,* 977 S.W.2d 789, 791 (Tex.App.—Fort Worth 1998, pet. ref'd). "The accused must overcome this presumption by affirmatively showing that his representation fails the two-part test set forth in *Strickland.*" *Id.*

Generally, we examine the totality of the representation in gauging the effectiveness of counsel. *Raborn,* 658 S.W.2d at 605. In some situations however, a single omission on counsel's part can be considered ineffective assistance. *Ex parte Felton,* 815 S.W.2d 733, 735 (Tex.Crim.App.1991); *Pena–Mota v. State,* 986 S.W.2d 341, 344

(Tex.App.—Waco 1999, no pet.). Our scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065; *Beheler v. State,* 3 S.W.3d 182, 185 (Tex.App.—Fort Worth 1999, pet. ref'd). "Representation is not ineffective simply because, in hindsight, the attorney could have or even should have done something differently." *Godwin v. State,* 899 S.W.2d 387, 391 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd). Allegations of ineffective assistance of counsel must be firmly founded in the record. *Beheler,* 3 S.W.3d at 185–186.

## THE MAJORITY'S MISAPPLICATION OF THE RULES

Before there can be ineffective assistance of counsel, counsel's performance must have been deficient. This means that counsel either took some improper action that was damaging to the client, or, as is more often the case, failed to take

some action that would have benefitted the client. Jaubert contends his counsel's conduct falls into the latter category. In Jaubert's brief, there are references to various shortcomings of Jaubert's counsel in failing to request the State's intent to use extraneous bad acts, the failure to obtain a pretrial ruling on admissibility of the evidence and the failure to object to the evidence. However, there is no ineffective assistance of counsel if an Article 37.07 request would not have required production by the State of the evidence about which complaint is now made. Thus, we must determine if a proper Article 37.07 request would have required production of the information. Further, we must determine if there are theories under which the State could have used the evidence other than Article 37.07.

## STATE'S CASE-IN-CHIEF[1]

In a very well reasoned and analytical opinion, the Fort Worth Court has specifi-

---

1. This is a transfer case. It was transferred to us from Fort Worth. We have never written on the precise issue that is before us in this case. The Second Court of Appeals, Fort Worth, has. While the majority cites other Fort Worth cases as persuasive authority, they ignore the prior decisions of the Fort Worth Court on issues that should control the outcome of this case. There is little question that if we were obligated to follow Fort Worth precedent this case would affirm.

Whether we like it or not, there are differences that develop among the way the courts of appeals interpret and apply the law. In fact, conflict among the courts of appeals provides the jurisdictional basis for the Texas Supreme Court to consider some appeals. *See* TEX. GOV'T CODE ANN. § 22.001(a)(2)(Vernon 1988). In an earlier decision of this case, I expressed my concern and belief that the better rule is to apply the law of the jurisdiction from which a transfer case originated rather than our own. *See, e.g., Jaubert v. State,* No. 10–99–090–CR (Tex. App.—Waco March 15, 2000, n. pet. h.) (Gray, J., concurring).

As long as we have transfer cases, the issue of the need to resolve conflicts is a reality, not some academic exercise for ivory tower consideration. The trial court judges in Tarrant County need to be assured that an appeal of their decisions will be reviewed under the opinions and holdings of the courts above them, namely the Fort Worth Court of Appeals, Court of Criminal Appeals, the Texas and United States Supreme Court, and not the conflicting decisions of some other jurisdiction to which one of their cases may randomly be transferred. This court has previously determined that we will apply "our law" to every case presented to us, even if it is a transfer case. *McLendon v. Texas Dep't of Pub. Safety,* 985 S.W.2d 571, 576 n. 6 (Tex. App.—Waco 1998), *rev'd,* 35 S.W.3d 632 (Tex. 2000).

The theory expressed is that "choice of law" principles are not applicable because they are based upon conflicts between different sovereigns and Texas is but one sovereign. Thus, there should only be one law. Whether a true "choice of law" analysis is applicable or not, the reality is that we have conflicts,

cally held that if the evidence of extraneous bad acts was not introduced in the State's case-in-chief, the State was not required to respond to an Article 37.07 § 3(g) request. *Washington v. State*, 943 S.W.2d 501 (Tex.App.—Fort Worth 1997, no pet.). In *Washington*, the Court analyzed the prior case law, the language of the statute and the legislative history and explained its holding and reasoning as follows:

> This construction, i.e. that section 3(g)'s notice provision only applies to the State's case in chief, does not produce an absurd result. The State must notify the defendant of all evidence it intends to introduce against the defendant in its case in chief, and the defendant is told of evidence that will be directly introduced against him. To hold otherwise would require the State to predict all possible arguments that a defendant might raise and then notify the defendant of the evidence that would rebut those possible arguments. This would directly contravene cases that hold the State does not have to disclose the identity of rebuttal witnesses. E.g., *Elkins v. State*, 543 S.W.2d 648, 649 (Tex.Crim.App.1976); *Hoagland v. State*, 494 S.W.2d 186, 189 (Tex.Crim.App.1973).
>
> This interpretation also gives due deference to the phrases "notice of *intent* to introduce evidence under this article ..." and "[i]f ... the state *intends* to introduce an extraneous crime or bad act...." TEX.CODE CRIM. PROC. ANN. art. 37.07 § 3(g) (Vernon Supp.1997) (emphasis added). The State cannot intend to introduce true rebuttal evidence before trial. Evidence that is offered in rebuttal cannot be foreseen because the State does not know what theories the

and it is fundamentally unfair for the trial judges conduct to be determined by standards

defendant will advance at punishment. *See Hoagland*, 494 S.W.2d at 188–89; *Doyle v. State* 875 S.W.2d 21, 22 (Tex. App.—Tyler 1994, no pet.).

*Id.* at 506 (emphasis as in original).

Because none of the evidence complained of by Jaubert was introduced in the State's case-in-chief, if Jaubert had filed the appropriate request for notice of the State's intent to use evidence of extraneous bad acts, the State would not have had to provide the information regarding the evidence about which Jaubert now complains. Quite simply, the State would have had no duty to make the disclosure even if Jaubert's attorney had made the Article 37.07 request. Thus there can be no ineffective assistance of counsel for having failed to make the request in the first instance.

IMPEACHMENT EVIDENCE

In addressing the applicability of Article 37.07, several courts have drawn distinctions between evidence offered for impeachment versus evidence of extraneous bad acts offered to assist the jury in determining proper punishment. *Calderon v. State*, 950 S.W.2d 121, 132 (Tex.App.—El Paso 1997, no pet.); *Barnett v. State*, 847 S.W.2d 678, 679–680 (Tex.App.—Texarkana 1993, no pet.); *Paley v. State*, 811 S.W.2d 226, 229 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd). In a case similar to the procedural and factual development of this case, the El Paso Court analyzed the issue as follows:

> In order to demonstrate that Calderon was a good candidate for probation, her counsel called Sara Mendoza, Calderon's mother, as a witness. Counsel asked Mendoza a single question relating to her eligibility for probation—

subject to the whims of the transfer system.

whether Calderon had ever been convicted of a felony. To this question, Mendoza answered no. On cross-examination, the State asked Mendoza whether she was aware that Calderon had been convicted for marijuana possession in 1978. Mendoza answered in the negative. Mendoza also testified that she and her daughter did not visit with one another. Calderon asserts that her counsel should have objected to the question about the marijuana conviction and should have addressed it in a motion in limine. Notwithstanding the fact that extraneous offenses are admissible, *see* TEX.CODE CRIM. PROC. ANN. art. 37.07 § 3(a) (Vernon Supp. 1996), this question was appropriate impeachment of a defense witness. *See* TEX.R.CRIM. EVID. 607; *see also McMillian v. State*, 865 S.W.2d 459, 460 (Tex. Crim.App.1993); *Anderson v. State*, 896 S.W.2d 578, 579 (Tex.App.—Fort Worth 1995, pet. ref'd). Calderon's counsel was not ineffective for failing to object to this evidence.

*Calderon v. State*, 950 S.W.2d 121, 132 (Tex.App.—El Paso 1997, no pet.). In *Paley*, the First Court of Appeals in Houston held that the trial court erred in refusing to allow proper impeachment of a defense witness about extraneous bad acts and that cases applying Article 37.07 did not prohibit it. *Paley*, 811 S.W.2d at 229.

Jaubert complains about questions asked on cross-examination of Pedleton, James Sr., and himself. In applying this analysis to the testimony about which Jaubert complains, it is evident that the testimony elicited by the State was impeachment evidence. The inquiry by the State was to impeach the witness's testimony regarding Jaubert's suitability for rehabilitation, a light sentence or a recommendation for community supervision. The questioning was proper impeachment and not the introduction of evidence of extraneous bad acts during the punishment phase pursuant to Article 37.07 § 3(a).

## OPENING THE DOOR

Other courts, including the Second Court of Appeals in Fort Worth, have analyzed the issue on the well established basis that if a defendant opens-the-door to an otherwise prohibited area of questioning, he cannot then be heard to object when the State decides to make further inquiry into the area. *Anderson v. State*, 896 S.W.2d 578, 579 (Tex.App.—Fort Worth 1995, pet. ref'd.); *McKee v. State*, 855 S.W.2d 89, 91–92 (Tex.App.—Houston [14th Dist.] 1993, no pet.). The Fourteenth Court of Appeals' analysis related to another section of Article 37.07 but is analogous to this case. The Court stated:

Article 37.07 § 4(d) provides that "This section does not permit the introduction of evidence on the operation of parole and good conduct time laws." Appellant contends that the State's questions and the elicited answers introduced evidence on the operation of parole laws. We agree. However, otherwise inadmissible evidence can be introduced during cross examination if the Appellant has opened the door to that issue. *Ortiz v. State*, 834 S.W.2d 343, 346 (Tex.Crim.App.1992).

When a party introduces matters into evidence, he invites the other side to reply. *Kincaid v. State*, 534 S.W.2d 340, 342 (Tex.Crim.App.1976). On direct examination by his attorney, Appellant testified that he had twice before been convicted but he had only spent a total of nine months in jail. We find that the State was properly permitted to cross examine the Appellant about the sentences he received, and the amount of time he spent in jail. Appellant clearly opened the door.

*McKee*, 855 S.W.2d at 91–92.

The Fort Worth Court, on facts similar to Jaubert's, has determined that once the

appellant opens the door, the State is not prohibited by Article 37.07 from introducing evidence of extraneous bad acts. The facts that the Court was dealing with and their holding are as follows:

In his sole point of error, appellant contends that the trial court erred in admitting evidence of a prior extraneous offense. In reviewing a trial court's decision regarding the admissibility of evidence of an extraneous matter, an appellate court must measure the trial court's ruling under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (op. on reh'g).

During the punishment phase of trial, appellant offered the testimony of a Reverend R.L. Taylor, who had known appellant nearly all of his life. Based on his personal knowledge and contact with appellant, Reverend Taylor opined that appellant would be a good candidate for probation. Reverend Taylor was then confronted with "have you heard" questions about appellant's prior brushes with the law. In response, Reverend Taylor stated that he was not concerned about appellant's prior misconduct because he believed appellant had turned his life around and thus would be a good candidate for probation "in the future."

In rebuttal, Birdie Lundsford testified for the State that on April 6, 1991, when she was thirteen-years-old, appellant exposed himself and masturbated in front of her and her two-year-old nephew in a public park. Appellant argues the trial court erred in admitting Lundsford's testimony on the grounds that it constitutes inadmissable extraneous offense evidence under TEX.CODE CRIM. PROC. ANN. art. 37.07 § 3(a). [footnote omitted] *See Grunsfeld v. State*, 843 S.W.2d 521 (Tex.Crim.App.1992). We disagree.

By offering Reverend Taylor's testimony that appellant was a "good candidate" for probation, appellant "opened the door" to rebuttal evidence about the specific bad act of indecent exposure. *McMillian v. State*, 865 S.W.2d 459, 460 (Tex.Crim.App.1993); *Grunsfeld*, 843 S.W.2d at 526 n. 12; *Ortiz v. State*, 834 S.W.2d 343, 344–46 (Tex.Crim.App. 1992); *Griffin v. State*, 787 S.W.2d 63, 67 (Tex.Crim.App.1990); *Murphy v. State*, 777 S.W.2d 44, 67–68 (Tex.Crim. App.1988). In other words, by tendering evidence of his "suitability" for probation, appellant in effect consented to the admission of specific acts of conduct to inform the jury's discretion in deciding what punishment to assess. *Griffin*, 787 S.W.2d at 67. *See also Kuczaj v. State*, 848 S.W.2d 284, 291 (Tex.App.— Fort Worth 1993, no pet.).

*Anderson*, 896 S.W.2d at 579–580.

Jaubert's witnesses, in particular James Sr. and Jaubert, testified on direct that he was a changed person, that the change was real and that he was a good candidate for rehabilitation, a lenient sentence or a recommendation for community supervision. They also specifically denied Jaubert's involvement in the rape. This testimony "opened-the-door" for the State to contradict the testimony with "specific acts of conduct to inform the jury's discretion in deciding what punishment to assess." *Id.* We should not use hindsight to second guess trial counsel's strategy.

## TESTING CHARACTER WITNESSES

The Austin Court has analyzed the issue on similar facts as one of testing the basis of a character witness's knowledge on cross-examination. The Court's analysis is as follows:

Appellant also urges that extraneous offense evidence was improperly adduced during the punishment phase of trial. Defense witness Larry Jackson

testified that he had known appellant most of his life and that, in his opinion, appellant was a peaceful and law-abiding person. During cross-examination, the State asked Jackson if he "ever heard that [appellant] was involved in a stabbing at the Alcoa Inn" and if he "heard about a complaint against [appellant] made by a—a woman here in Cameron for aggravated sexual assault." Appellant objected to "these specific instances of conduct unless the State can show that there's been some kind of conviction." Appellant now argues that the State was required to prove appellant's guilt of the unadjudicated offenses beyond a reasonable doubt. TEX.CODE CRIM. PROC. ANN. art. 37.07 § 3(a) (West Supp.1995).

Appellant's contention on appeal does not comport with his trial objection and is without merit in any event. The State was not attempting to prove appellant's commission of unadjudicated offenses pursuant to article 37.07, but to test the weight of Jackson's character testimony. A witness who testifies to the defendant's good character may be cross-examined regarding relevant specific misconduct by the defendant. *Reynolds v. State*, 848 S.W.2d 785, 788 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd); *Bratcher v. State*, 771 S.W.2d 175, 186–87 (Tex.App.—San Antonio 1989, no pet.); *Lancaster v. State*, 754 S.W.2d 493, 495 (Tex.App.—Dallas 1988, pet. ref'd); TEX.R.CRIM. EVID. 405(a). [footnote omitted]. Appellant did not challenge the factual basis of the State's questions at trial and there is nothing in the record to suggest that the questions

were asked in bad faith. Appellant's trial objection was correctly overruled. *Drone v. State*, 906 S.W.2d 608, 616 (Tex. App.—Austin 1995, pet. ref'd).

## SUMMARY

There are several different analysis that could be applicable to the testimony on cross-examination about which Jaubert complains. Not being part of the State's case-in-chief, the Article 37.07 disclosure requirement would have never been triggered, even if the request had been made by Jaubert's counsel. Likewise, whether the testimony is analyzed as impeachment testimony, testing the witness's knowledge or whether the defendant opened the door to the admission of otherwise inadmissible testimony, the result is all the same. The evidence would not have been responsive to an Article 37.07 request. Trial counsel was not ineffective in failing to object. The testimony was either not objectionable or any objection could have been easily overcome by the State. *See Reynaga v. State*, 776 S.W.2d 777, 779 (Tex.App.—Corpus Christi 1989, no pet.). On this record, it cannot be said that trial counsel was ineffective by failing to make an Article 37.07 request, failing to object to the testimony or in failing to secure a pre-trial ruling on its admissibility.

## IGNORING HIGHER COURT PRECEDENT

From the record discussed above, there is no per-se evidence of ineffective assistance. The majority concludes that the Jaubert's counsel was ineffective because he did not file a request pursuant to Article 37.07.[2] However, to conclude that this

---

2. Actually Jaubert argues that trial counsel was ineffective in failing to file a motion to compel the State to produce the information responsive to Article 37.07 § 3(a). Although the filing of a motion may have obtained the information, a motion does not trigger the

State's obligation to produce the information. *Mitchell v. State*, 982 S.W.2d 425 (Tex.Crim. App.1998). If a motion is filed, the defendant must obtain a ruling on the motion to trigger the State's duty. *Id.* The better practice, because it does not require judicial intervention,

was ineffective assistance of counsel, the majority has to make a number of presumptions that are not supported by the record. By doing this, the majority changes the presumption the Court of Criminal Appeals has directed that we are bound to apply-to "strongly presume" that counsel was effective. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App. 1996). Reversing this presumption allows the majority to conclude that Jaubert's trial counsel's failure to request notice under Article 37.07 § 3(g) "... was unreasonable and is not justified by 'trial strategy.' "

Rather than presume effective assistance of counsel, they have presumed ineffective assistance and searched the record for an explanation to justify why counsel would not have made the request. Even in this search, they ignore the statements in the record that indicate a perfectly reasonable explanation for not wasting resources by filing a request for the Article 37.07 disclosure. The Tarrant County District Attorney has an open file policy. While an open file policy will not suffice if a formal Article 37.07 request is made, Jaubert's attorney could have examined the DA's file and determined that the jail offense reports were present. In this very efficient manner, counsel could have learned what information the DA's office had and could prepare to respond to it. This could be done without the need for a formal request and a formal response. Jaubert loses no statutory rights and does not receive any less effective representation. In fact, this may work to Jaubert's benefit by not forcing the State to focus on the other-bad-act evidence by having to prepare a written response as is required

if the defendant files a formal written request.

Further, there is no prohibition from obtaining this information by way of an oral request. The majority ignores this possible explanation and thus presumes there was no oral request. Of course, there is no documentation to prove that an oral request was made. But the statute does not require a written request before the State can provide the responsive information. By allowing for the possibility of an oral request and informal response, the lawyers are left to work out the discovery in the most efficient manner with the least amount of time and paper wasted. It seems that we should do everything we can to facilitate this type of cooperation rather than destroy it.

As indicated, there is no evidence in the record of an oral request and nothing in the record that affirmatively shows that the State provided the information in response to an oral request or simply volunteered the information, knowing that if requested that they would have to produce it. This brings me back to the presumptions. The majority has presumed that there was no oral request and no voluntary cooperation, again presuming ineffectiveness. Whereas, I presume this could be a perfectly reasonable explanation for the absence of a written request. This becomes an evidentiary issue that could be resolved at a fact hearing.

I believe that the Court of Criminal Appeals has clearly articulated the effect of the rules applicable to evaluating claims of ineffective assistance of counsel. The clear result of the applicable presumptions is that if any set of facts that is not contrary to the existing record could exist that would allow the conclusion to be

is to simply file a notice demanding that the State provide the information pursuant to Article 37.07 § 3(g).

reached that counsel was effective, the judgment must be affirmed.

As it has been repeatedly discussed in prior cases, because of the inability to resolve potential factual disputes or issues, direct appeal of ineffective assistance of counsel claims is particularly difficult. Without a record to develop the factual underpinnings of a claim, a cold record is seldom adequate to prove ineffectiveness of counsel. *See Gonzalez v. State*, 994 S.W.2d 369 (Tex.App.—Waco 1999, no pet.); *Foster v. State*, 8 S.W.3d 445 (Tex. App.—Waco 1999, no pet.). The defendant is not without relief. The defendants relief is by a post trial writ of habeas corpus to show that the state of facts which could exist does not in fact exist.

Of course there is a much more pragmatic explanation for not making the Article 37.07 request. It is a problem trial lawyers face all the time. "Do I make the request and cause the opposition to focus on the issue, and possibly cause them to discover previously unknown bad acts, or do I trust my client to tell me what is out there in the way of other bad acts and simply prepare to meet it if the State is aware of it and decides to use it?" Even civil practitioners are faced with this dilemma when requesting discovery of whether their opponent intends to use any final convictions to impeach any of their witnesses. TEX.R. EVID. 609(f). This is a variant of the doctrine-of-negative-surveillance-"Do I ask for something that may work to my benefit but also has the very real risk of causing me to come under greater scrutiny?"

Another possible explanation, given the excellent manner in which defense counsel conducted Jaubert's case, is that having nothing to counter this evidence with, the defense "put their best foot forward" and hoped for the best. Jaubert may have been fully aware of the State's intended use of the information but had no other evidence to counter it with. Even on appeal, Jaubert has not claimed that he would have done a single thing differently had he known the State possessed and intended to use this information. I would say this trial strategy worked pretty well for Jaubert. His sentence for killing one person and attempting to kill four others was a maximum time in prison of only 60 years.

## REWRITING THE STATUTE

The part of the statute relevant to this case requires that only if the State intends to use evidence of a prior bad act in the punishment phase of the trial to enhance sentencing and only if the defendant makes a timely request, must the State disclose the alleged date and location of the incident and the name of the victim. Under the guise of ineffective-assistance-of-counsel, the majority has rewritten the statute to require the State to disclose evidence of extraneous bad acts, without a request, if under any scenario which may develop at trial the State could seek to introduce or refer to a prior bad act or extraneous offense for any purpose.

If the State fails to make this disclosure the State must forego all use of the evidence or the defendant is guaranteed a new trial. The majority will entertain no theory or explanation that the request and disclosure were unnecessary, that there is any theory under which the failure to request the notice could have been sound trial strategy or that the evidence did not contribute to the punishment. They have given the criminal defendant much greater rights than did the legislature.

This judicial rewrite of the Code of Criminal Procedure causes me the same concerns the Court of Criminal Appeals expressed when it held that a motion to obtain Article 37.07 information did not

trigger the State's duty to provide the information until the motion was actually ruled on by the court. *Mitchell v. State,* 982 S.W.2d 425, 427 (Tex.Crim.App.1998). In *Mitchell* the Court stated:

> To hold otherwise would encourage gamesmanship. The opposite rule could encourage defendants to bury requests in voluminous motions, hoping the State would either overlook it or believe ... the request to be contingent on a court order. An ad hoc approach would encourage gamesmanship on the part of both parties. We do not ascribe such motives to counsel in the present case, but we recognize the potential for abuse.

*Id.* My fear is that the very decision of whether or not to make an Article 37.07 request, versus the potential to obtain a new trial (at least on punishment) will become part of trial strategy. The well prepared defense counsel, representing his client within ethical constraints, will know that he can build reversible error into the case by not making an Article 37.07 request. At the same time, he can zealously represent his client by being fully prepared to meet any evidence of extraneous crimes or bad acts. If the trial goes badly for his client, the client's appellate counsel will be able to argue that he is entitled to a new trial on punishment.

#### CONCLUSION

I would not rewrite the statute. I would follow binding Court of Criminal Appeals precedent. I would follow the applicable statute and evidentiary rules including the interpretation thereof by our sister courts, in particular the Fort Worth Court of Appeals from which this case was transferred to us. I would affirm the judgment and hold that on the record before us Jaubert has failed to meet his burden of showing that trial counsel was ineffective.

## ORDER ADOPTING PUBLICATION

PER CURIAM.

Notwithstanding our order on April 26, 2000, our opinions of March 15, 2000 and order on April 26, 2000 shall be published.