# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00620-CR

**Willie Fred Houston, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 3 OF TRAVIS COUNTY
### NO. 654291, HONORABLE DAVID CRAIN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After a bench trial, Willie Fred Houston was convicted of the offense of assault with bodily injury. *See* Tex. Pen. Code Ann. § 22.01(a)(1) (West 2003). The court sentenced him to 270 days' confinement in the Travis County Jail. In one issue on appeal, Houston seeks reversal of his conviction on the ground that his counsel provided ineffective assistance. We will affirm the trial court's judgment.

### Background

On January 2, 2004, Houston, Ritchie Anderson, and Carey Rogans had been drinking beer at Lisa Johnson's house, when Johnson, Anderson, and Rogans decided to go to the store. Anderson testified that upon their return, Houston came out of the house and "hit [Anderson] upside [the] head, right in the eye" for no apparent reason. After Anderson fell to the ground, Houston

kicked Anderson, then walked away. Anderson received a cut to the ear, and his eye was swollen and painful for about a month and a half.

Houston pled not guilty to the offense. After a bench trial during which Anderson testified and was cross-examined concerning the attack, the trial court found Houston guilty of assaulting Anderson, and proceeded immediately to sentencing.[1] The trial court began by asking for sentencing recommendations. The State called Anderson to testify regarding his medical bills. After the State finished examining Anderson, the punishment hearing proceeded as follows:

> The Court: Do you have any questions?
>
> Ms. McDaniel [defense counsel]: No, Your Honor.
>
> The Court: You can step back down. (Witness [Anderson] excused.)
>
> Mr. Swaim [prosecutor]: Your Honor, the State would ask for a year in jail if this man's just going to run out the door and punch somebody so bad that their eye is swollen up, and they're knocked out, bleeding on the ground, and the tax payers have to pay for it through the crime victim's compensation fund. I don't think that's unreasonable at all, Your Honor.
>
> Ms. McDaniel: We have no comment, Your Honor.
> The Court: Is there any issue about criminal history?
> Mr. Swaim: Your Honor, the defendant's awaiting trial on three felonies. And I don't have his entire criminal history here in front of me . . . at the time, he may have been on parole, Your Honor.
>
> Ms. McDaniel: He was on parole at the time.

---

[1] Technically, the bifurcated trial procedure is not authorized in a bench trial. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 2(a) (West Supp. 2005) (bifurcated procedure applies to cases tried before jury on a plea of not guilty); *Barfield v. State*, 63 S.W.3d 446, 449 (Tex. Crim. App. 2001). As noted in *Barfield*, however, it is not uncommon for a court to bifurcate a bench trial, often to order a pre-sentence investigation to assist in assessing punishment. *Id*. at 450; *see also* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (regardless of plea and whether court or jury assesses punishment, State or defendant may offer evidence "as to any matter the court deems relevant to sentencing").

The Court: I'll sentence you to 270 days in jail and court costs.

This exchange ended the punishment hearing.

In one point of error, Houston argues that his Sixth Amendment rights were violated because he received ineffective assistance of counsel during the punishment phase of his trial. Houston identifies four specific deficiencies in his trial counsel's performance: (1) after the State had asked for the maximum sentence, counsel responded "no comment," instead of advocating for a lesser sentence; (2) counsel failed to request notice before the hearing of whether the State intended to present evidence of extraneous offenses; (3) counsel failed to object and require the State to provide evidence when it mentioned Houston's pending felonies; (4) counsel admitted that Houston was on parole at the time of the assault instead of requiring the State to prove it.

**Discussion**

***Standard of Review***

To have his conviction reversed on the ground of ineffective assistance of counsel, an appellant must show that counsel's representation fell below an objective standard of reasonableness and the deficient performance prejudiced the appellant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986) (adopting the *Strickland* two-prong test). Unless the appellant makes both showings, it cannot be said that his conviction is rendered unreliable by a breakdown in the adversarial process. *Strickland*, 466 U.S. at 687. This standard applies to both the guilt-innocence and the punishment phase of trial. *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

When addressing the first prong of the test, a court must review counsel's performance with a high degree of deference. *Strickland*, 466 U.S. at 690; *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance, and the defendant must overcome the presumption by a preponderance of the evidence. *Strickland*, 466 U.S. at 690; *Andrews*, 159 S.W.3d at 101; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). We determine the reasonableness of counsel's challenged conduct in context, and view it as of the time of counsel's conduct. *Strickland*, 466 U.S. at 690; *Andrews*, 159 S.W.3d at 101.

The court of criminal appeals has said that we assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it. *Bone v. State,* 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002) (quoting *Garcia v. State,* 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). The policy behind this analysis is that "[i]ntensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client." *Strickland,* 466 U.S. at 690. This standard balances the protection of these important policy interests with the protection of each defendant's fundamental Sixth Amendment rights.

A defendant may prevail on an ineffective assistance claim by providing a record that affirmatively demonstrates that counsel's performance was not based on sound trial strategy. *Mallet v. State*, 66 S.W.3d 59, 63 (Tex. Crim. App. 2001). However, the record on direct appeal is in almost all cases inadequate to show that counsel's conduct fell below an objectively reasonable standard of performance. *See Bone,* 77 S.W.3d at 833; *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.

Crim. App.1999). The better course of action is to pursue the claim in habeas proceedings. *Bone,* 77 S.W.3d at 833; *Thompson,* 9 S.W.3d at 813. In rare instances, if no reasonable trial strategy could justify trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as she did. *Strickland,* 466 U.S. at 690; *Andrews*, 159 S.W.3d at 102.

To satisfy the second prong of the *Strickland* test, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694; *Andrews*, 159 S.W.3d at 102.

### *Deficient Performance*

Houston contends that counsel's failure to require the State to prove his pending felonies and her concession about his parole status at the time of the assault constituted deficient performance. When an ineffective assistance claim alleges that counsel was deficient in failing to object to the admission of evidence, the defendant must show that the evidence was inadmissible. *Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002). Evidence of Houston's extraneous offenses and parole status would have been admissible as part of the court's consideration of matters relevant to sentencing. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a) (West Supp. 2005).

Additionally, requiring the State to prove Houston's offenses could have resulted in some details of those crimes coming to light just before the trial court decided Houston's punishment, which could reasonably have been expected to harm Houston. In other words, because counsel could not have successfully excluded evidence of Houston's offenses, a valid trial strategy

5

could have been to admit that Houston was on parole and was being prosecuted for other crimes in order to avoid scrutiny of those crimes. *See Bone*, 77 S.W.3d at 833, n.13 (assume strategic motive if any can be imagined).

Houston next contends that counsel's failure to request notice of whether the State intended to introduce evidence of extraneous offenses at punishment constituted deficient performance. He cites *Jaubert v. State* for the proposition that there can be no strategic basis for not requesting notice under article 37.07, § 3(g) of the code of criminal procedure. 65 S.W.3d 73, 81-82 (Tex. App.—Waco 2000), *rev'd*, 74 S.W.3d 1 (Tex. Crim. App. 2002). The facts in *Jaubert* show that the defense was actually surprised by evidence of extraneous misconduct introduced by the State. "The purpose of Article 37.07, § 3(g) is to avoid unfair surprise, that is trial by ambush." *Nance v. State,* 946 S.W.2d 490, 493 (Tex. App.—Fort Worth 1997, pet. ref'd). In this case, on the other hand, the record shows that counsel already knew about Houston's criminal history and was adequately prepared. Thus, she may have concluded that requesting notice was unnecessary. The record before us is silent as to counsel's motivation.

Houston argues that by requesting notice, counsel may have prevented the State from introducing evidence of Houston's pending felonies because the State may have failed to respond to the request. This assertion is too speculative, however, to lead to the conclusion that failure to request notice is "so outrageous that no competent attorney would have engaged in it." *Garcia,* 57 S.W.3d at 440. Further, we note that trial counsel's failure to file pretrial motions generally does not result in ineffective assistance of counsel. *See Autry v. State*, 27 S.W.3d 177, 182 (Tex. App.—San Antonio 2000, pet. ref'd); *Wills v. State,* 867 S.W.2d 852, 856 (Tex. App.—Houston [14th Dist.]

6

1993, pet. ref'd); *Martinez v. State,* 824 S.W.2d 688, 690 (Tex. App.—El Paso 1992, pet. ref'd). Houston has not demonstrated ineffectiveness based on this record.

Finally, Houston contends that his counsel's general lack of advocacy and response of "no comment" after the State's closing sentencing argument amounted to deficient performance. The State responds that Houston failed to develop the record and is asking this Court to speculate that counsel's behavior during the punishment phase was not a reasonable trial strategy.

Although it is possible to have a case in which no reasonable trial strategy could justify counsel's conduct, even if the record does not adequately reflect counsel's subjective reasons for acting as she did, such cases are rare. *Andrews*, 159 S.W.3d at 100, 103 (referring to "unusual circumstances" and "extremely unusual circumstances").[2] Although close, we conclude that this is not the kind of rare case discussed in *Andrews* but the kind of case discussed in *Bone*. In *Bone*, the court of criminal appeals reversed the appellate court's holding that counsel was ineffective. The court of criminal appeals noted that because the appellate court did not discern any particular strategy on counsel's part, it assumed counsel had no strategy. *Bone*, 77 S.W.3d at 836. This assumption inverted the *Strickland* analysis that places the burden on the defendant to prove that there was no plausible professional reason for counsel's conduct. *Bone*, 77 S.W.3d at 836. In *Bone*, the court observed that the defendant did not produce a record to show that any mitigating evidence existed that defense counsel could have produced. *Bone*, 77 S.W.3d at 834-35. A "vague, inarticulate

---

[2] In a dissenting opinion, P.J. Keller said, "Our inability to think of a strategy does not mean that such a strategy could not have existed." *Andrews v. State*, 159 S.W.3d 98, 104 (Tex. Crim. App. 2005). She said that the court should not "jump the gun" and grant relief on direct appeal, but rather should allow the record and counsel's reasons for his actions to be fully developed in a habeas proceeding. *Id*.

sense" that counsel could have provided a better defense is not a legal basis for finding ineffective assistance. *Id*. at 836.

In this case, we have a comparable concern. Houston asserts that counsel simply did not advocate for him at sentencing. However, Houston has not presented a record to show what she could have done. Houston does not claim that counsel failed to investigate his case and therefore failed to find mitigating evidence that existed and could have been used at the punishment phase. He has not produced a record that shows that any mitigating evidence existed. Trial counsel attempted to show, during the guilt-innocence phase, that the victim was drunk and therefore perhaps mistaken about who attacked him; however, the victim made a clear, positive, in-court identification. Based on this record, we cannot assume that any mitigating evidence existed or any other arguments were feasible beyond that used in guilt-innocence. In fact, given the chance to explain, counsel's explanation may be that she either found no mitigating evidence or found something that could assist the prosecution in getting the maximum sentence. On the record of this case, it would not be unreasonable for counsel to have concluded that the best advocacy under these particular circumstances was silence, as her previous attempt at mitigation had been unsuccessful.

Accordingly, we do not conclude that this is the rare case in which a silent record allows us to find ineffective assistance as a matter of law and we hold that Houston has not demonstrated ineffective assistance through counsel's silence.

### *Prejudice*

Even if Houston had been able to establish counsel acted ineffectively, he still would fail the second prong of the *Strickland* test because he failed to show a reasonable probability that the result of the proceeding would have been different if his counsel had not committed the acts and

8

omissions about which he complains.  *See Strickland*, 466 U.S. at 694.  The maximum sentence Houston could have received was 365 days and a $4,000 fine.  He received 270 days and no fine, significantly less than the maximum as requested by the State (with regard to the time imposed, he received about 75% of the maximum).  He points to nothing in the record indicating that he might have received a lesser sentence if his counsel had more actively advocated, particularly in view of what appeared to be an unprovoked and vicious crime.  Instead, he basically asserts in a conclusory manner that if counsel had asked for a lesser sentence, instead of responding "no comment," that he would have received less than 270 days.  We overrule Houston's single issue.

## Conclusion

We have held that Houston's counsel's performance was not ineffective and that, even if it were, Houston failed to establish the second prong of the *Strickland* test.  The judgment of the trial court is affirmed.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   August 31, 2006

Do Not Publish

9