**Affirmed and Memorandum Opinion filed March 4, 2014.**



In The

# Fourteenth Court of Appeals

### NO. 14-13-00260-CR

**KWASI POWERS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1354677**

### M E M O R A N D U M   O P I N I O N

Appellant Kwasi Powers appeals his felony conviction for aggravated assault with a deadly weapon in connection with an attack on his ex-wife, Coby Wages, and her boyfriend, Oscar Espino. In a single issue, appellant contends he was denied the right to effective assistance of counsel. We affirm.

### Background

Wages and Espino left their apartment for work at approximately 10:00 p.m. on July 5, 2012. As they walked toward their car, appellant approached the car and began

striking Espino with a metal pipe. Wages saw appellant strike Espino multiple times in the head and body with the pipe. Attempting to help Espino, Wages threw herself on top of Espino. Appellant hit Wages then threw her to the ground and hit her again. Wages lost consciousness. When she woke, she saw Espino holding the metal pipe and appellant running away.

Espino grabbed the pipe from appellant as appellant continued to strike him. After Espino grabbed the pipe, appellant ran from the scene. Espino followed appellant but retreated after appellant said, "If you follow me, I'm going to pop you once." Both Wages and Espino described the metal pipe as similar to a car jack handle. Espino returned to the car and Wages drove them to the hospital. Wages had a neck injury and cuts on her legs. Espino had a bleeding head wound, and a shattered elbow and wrist. The head wound required insertion of a piece of metal, which remains in Espino's head.

Deputy Maurice Bucklin of the Harris County Sheriff's Department investigated the scene of the assault. After interviewing witnesses, he and Deputy Martin Park drove to appellant's home. Bucklin observed a red floor jack under the carport at appellant's home. The floor jack appeared to be missing a handle. Bucklin testified that the piece that appeared to be missing from the floor jack was similar in size and color to the pipe, or jack handle, used by appellant to assault Wages and Espino.

Deputy Park met Wages and Espino at the hospital. Wages gave Park the jack handle that was used in the assault. At trial, both Wages and Espino positively identified appellant as the individual who assaulted them. Espino also identified the car jack handle appellant used to assault him. The jury found appellant guilty of aggravated assault as charged in the indictment.

During the punishment phase of trial, the State offered and the trial court admitted evidence that appellant had four prior convictions for possession of marijuana.

Espino testified that due to the injuries caused by the assault he has a metal piece in his head and is unable to lift more than thirty pounds using his left hand. During Espino's testimony, the prosecutor approached the bench and explained that she intended to ask Espino about appellant's violations of a protective order. Appellant's counsel objected as follows:

> Your Honor, Defense was not given notice that this was going to be introduced in the penalty phase of this trial; and I would say that it's unfair surprise because I'm not appri[s]ed of any of the facts of this case. And I would not be prepared to cross-examine this witness. Any statements that were made I wouldn't really know the veracity.

The State responded that appellant failed to request notice of the State's intent to introduce extraneous offenses during punishment pursuant to article 37.07, section 3(g) of the Texas Code of Criminal Procedure, which provides:

> (g) On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence. If the attorney representing the state intends to introduce an extraneous crime or bad act that has not resulted in a final conviction in a court of record or a probated or suspended sentence, notice of that intent is reasonable only if the notice includes the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act. The requirement under this subsection that the attorney representing the state give notice applies only if the defendant makes a timely request to the attorney representing the state for the notice.

Tex. Code Crim. Proc. Ann. art. 37.07 § 3(g) (Vernon Supp. 2013).

The trial court reviewed the file and noted that it did not see a request for notice under article 37.07. Appellant's counsel explained that she thought the State's response to her discovery request included all extraneous offenses the State intended to introduce at punishment. The record reflects notice given by the State in a document entitled, "Notice of Intention to Use Evidence Pursuant to Texas Rules of Criminal Evidence

404, 609, and 37.07(g) [sic]." The disclosure listed violation of a protective order in cause number 1354676. The State proffered two protective orders. It is unclear from the record which of the two protective orders, if any, are the underlying protective order that lead to the indictment listed in the disclosure.

The trial court decided to admit evidence of the violation of the protective order and recessed the trial to give defense counsel 15 to 25 minutes to review the State's evidence on the protective order.

Following the recess, the State introduced into evidence a July 11, 2012 protective order, that prohibited appellant from communicating with Wages; going within 200 feet of her residence; and going within 200 feet of her place of employment. Appellant objected arguing that because the protective order referred to Wages, not Espino, that it was irrelevant to punishment for the assault of Espino. The trial court overruled appellant's relevance objection.

Espino testified that he had personal knowledge of the protective order. He testified that the protective order was necessary because appellant assaulted Wages and him on July 5, 2012. Espino testified that appellant violated the protective order by attempting to contact Wages via telephone on July 26 and 28, 2012. On cross-examination, Espino testified that they did not answer the phone and did not speak to appellant. The phone calls stopped on July 28, 2012.

Wages also identified State's Exhibit 21 as the protective order issued after appellant was arrested for assault. Wages testified that she received 18 or 19 phone calls from appellant on July 26, 2012. Appellant first called on July 16, 2012; Wages identified the phone number as being from the jail and did not answer again if she received a phone call from that number.

The State admitted State's Exhibit 22, which was a protective order in cause

number 2011-29523 issued June 9, 2011, while appellant and Wages were still married. The order prohibited appellant from committing family violence against Wages, communicating with Wages, going within 200 feet of her residence or place of employment, possessing a firearm, and engaging in conduct directly and specifically toward Wages that is likely to harass, annoy, alarm, abuse, torment, or embarrass Wages.

Wages testified, over appellant's objection, that on May 6, 2011, appellant threatened her with a knife. Earlier on January 22, 2011, appellant struck Wages in the face while they were in Austin. On the same night as they drove back to Houston, appellant repeatedly hit Wages with his fist in her face. These events led to the June 9, 2011 protective order.

On cross-examination, appellant's counsel questioned Wages about the contested hearing that led to the 2011 protective order. At the hearing, Wages was represented by counsel and appellant represented himself. Counsel questioned Wages extensively on her motives behind obtaining the protective order and the fact that these earlier assaults never resulted in criminal charges. Wages admitted that she smoked marijuana and drank alcohol in front of her children.

Appellant's parents testified on his behalf. Appellant's father testified that appellant is intelligent and, if the jury gave him probation, he would welcome appellant in his home and ensure successful completion of probation. He also testified he would ensure appellant did not contact Wages while on probation. Appellant's mother testified that he could live on a trailer on their property in Nacogdoches. They live on 89 acres; if appellant were unable to obtain employment in Nacogdoches or Lufkin, he could work their fields.

Each of appellant's three children testified. They live with their grandparents and visit Wages and Espino on the weekends. One of the children testified that one weekend

5

Espino "thumped [him] on the back of [his] head." The child testified that it did not hurt, but scared him. The child called appellant and reported that Espino had "flicked [him] on the ear." All three children testified that they did not want their father to be incarcerated.

Appellant testified that on July 5, 2012, his son called him and reported that Espino had hit him. This angered appellant and he tried to call Wages and ask about it, but Wages did not answer her phone. Appellant learned where Wages lived by asking his children, and went to the address looking for Espino. Appellant explained that he hit Espino out of anger because he thought Espino had hit his son.

Appellant testified that he recorded video of the night when he allegedly threatened Wages with a knife on May 6, 2011. Appellant testified that at the time the protective order was issued in civil court he did not have counsel. He wished that he had retained counsel to assist him in disproving the allegations against him. He was unable to play the video at the earlier hearing in which the protective order was issued.

The jury assessed punishment at ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

## Analysis

Appellant contends that he was denied his right to effective counsel under the Sixth Amendment of the United States Constitution because his attorney failed to request that the State give notice of its intent to offer evidence of extraneous offenses or bad acts pursuant to article 37.07 section 3(g) of the Texas Code of Criminal Procedure. Appellant did not file a motion for new trial alleging ineffective assistance of counsel.

To prevail on a claim of ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness; and (2) the deficient

6

performance caused appellant prejudice because there is a probability sufficient to undermine confidence in the outcome that but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (*citing Strickland v. Washington*, 466 U.S. 668 (1984)).

To satisfy *Strickland*'s first prong, the appellant must identify acts or omissions of counsel that allegedly were not the result of reasonable judgment. *Strickland*, 466 U.S. at 690. A defendant must overcome the presumption that trial counsel's actions fell within the wide range of reasonable and professional assistance. *Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007). To satisfy *Strickland*'s second prong, the appellant must establish a reasonable probability that, but for counsel's errors, the result would have been different. *Strickland*, 466 U.S. at 694.

Failure to satisfy either prong defeats an ineffective assistance claim. *Id.* at 697. In determining whether counsel was ineffective, we consider the totality of the circumstances of the particular case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Appellant cites *Jaubert v. State*, 65 S.W.3d 73, 81–82 (Tex. App.—Waco 2000), *rev'd on other grounds* 74 S.W.3d 1 (Tex. Crim. App. 2002), in connection with the first *Strickland* prong. He relies on *Jaubert* for the proposition that there is no strategic basis for defense counsel's failure to request notice under article 37.07, section 3(g), and that the failure to make such a request is not justified by trial strategy. We need not determine whether counsel's performance was deficient before examining whether appellant suffered prejudice as a result of alleged deficiency. *See Strickland*, 466 U.S. at 697; *Tieu v. State*, 299 S.W.3d 216, 225 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd).

Turning to the second prong, we find appellant failed to demonstrate prejudice. Appellant has not made any argument or showing that the State's evidence was

irrelevant or inadmissible. Appellant contends his counsel was "caught off guard" that the State sought to introduce extraneous offense testimony that appellant violated a previous protective order. Appellant argues that had counsel been adequately prepared she could have investigated the allegations, obtained evidence disproving their claims, and secured possible witnesses to refute their accusations.

The record reflects that counsel was given a 15 to 25 minute recess to review the State's evidence. In addition, after Wages testified for the State, the court took a 45 minute lunch break allowing more time for appellant's counsel to discuss the allegations with appellant. There is no evidence presented that this time period was insufficient, nor is there evidence presented that could disprove the witnesses' claims, because there was no motion for new trial. On this record, we cannot conclude that there is a reasonable probability, i.e., one sufficient to undermine confidence in the outcome, that the result of the punishment hearing would have been different had appellant's trial counsel properly requested notice of the State's intent to introduce evidence of extraneous offenses or bad acts. *See Strickland*, 466 U.S. at 687, 694

The State argues that "trial counsel likely did not request notice of extraneous offenses and bad acts because she believed a complete notice of this evidence had been disclosed since the State did file a notice of some extraneous offenses." The State points out trial counsel was entitled to rely on the State's disclosure of extraneous offenses and bad acts, and to assume that these acts were the only ones that the State intended to offer. *See McDonald v. State*, 179 S.W.3d 571, 577–78 (Tex. Crim. App. 2005). In that regard, we conclude that even if the trial court erred in admitting the extraneous offenses without proper notice to appellant, the error was harmless.

The erroneous admission of extraneous offense evidence in violation of section 3(g) is nonconstitutional error; therefore, we analyze it to determine whether the error affected a substantial right of the defendant. Tex. R. App. P. 44.2(b); *Webb v. State*, 36

S.W.3d 164, 178 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *see also Gray v. State*, 159 S.W.3d 95, 97–98 (Tex. Crim. App. 2005) (erroneous admission or exclusion of evidence is nonconstitutional error). A substantial right is affected when the error has a "substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If the error had no or only a slight influence on the verdict, the error was harmless. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

We evaluate the effect of error in admitting extraneous offense evidence without adequate notice in light of the purpose of section 3(g), which is to prevent unfair surprise to the defendant and to enable him to prepare to answer the extraneous offense evidence. *See Roethel v. State*, 80 S.W.3d 276, 281–82 (Tex. App.—Austin 2002, no pet.). This analysis requires examining the record to determine whether the deficient notice resulted from prosecutorial bad faith or prevented the defendant from preparing for trial. *Id.* at 282. In determining the latter, appellate courts look at whether the defendant was surprised by the substance of the testimony and whether that affected his ability to prepare cross-examination or mitigating evidence. *Id.*

In this case, appellant does not argue the State acted in bad faith, but argues counsel was surprised by the evidence and not prepared to rebut the allegations of extraneous offenses. Counsel was permitted 15 to 25 minutes to review the State's evidence and confer with appellant. Counsel thoroughly cross-examined Espino and Wages about violations of the protective orders. *See McDonald v. State*, 179 S.W.3d at 578 (concluding that no harm resulted because, among other reasons, the defendant had an opportunity to cross-examine the witness and attempt to discredit her, and finding that had there been legitimate surprise, which would have altered his trial strategy, the defendant could have requested a continuance). During closing argument, appellant's counsel discussed the violations of the protective orders, and attempted to cast doubt on

Wages' testimony regarding the assault on the drive from Austin to Houston, and the allegedly harassing phone calls. The jury sentenced appellant to ten years in prison, well within the range of punishment for the offense. *See* Tex. Penal Code Ann. § 12.33 (West 2011) (range of punishment for second degree felony is two to twenty years).

Whether we view this case under the *Strickland* harm analysis (for failing to request the notice) or under the standard in *McDonald* (for admitting evidence when the State failed to give proper notice) we find no harm. We overrule appellant's sole issue and affirm the trial court's judgment.


/s/    William J. Boyce
Justice


Panel consists of Justices Boyce, Christopher, and Brown.

Do Not Publish — TEX. R. APP. P. 47.2(b).